LEE CAHN, Appellant, v. A. J. REID and H. F. BUNGARDT, Respondents.

### Kansas City Court of Appeals, May 25, 1885.

1. REPLEVIN—WHEN IT LIES IN CASE OF RESCISSION OF CONTRACT BECAUSE OF FRAUD.—Where the possession of goods has been parted with by means of false and fraudulent representations, the victim of the design and artifice has his election to stand by the contract and sue for damages or treat the contract as void and rescind it. Fraud and deceit will, at the election of the party injured, entitle him to treat the entire negotiation as void from its inception, and authorize a court to hold, that, notwithstanding the possession of the property has changed, yet the title—the property in the goods—has not passed. Detention from one who has both right of property and right of possession is necessarily wrongful. But, in such cases, it is absolutely essential that the party asserting this right, should, immediately on discovering the bad faith of the one with whom he has dealt, *rescind* the contract by placing him *in statu quo*. The rescission must be *in toto*, for one will not be permitted to adopt so much of a voidable contract as he deems benefi-

cial and reject that portion which may be thought to be onerous. And the rescission must be made by the offer to place the wrongful party *in statu quo*, before action by replevin is maintainable, and if brought before doing this, the action is prematurely brought and must abate; the rescission is the first thing, and is an absolute prerequisite to the right to sue. *Pearsal v. Chapin*, 44 Pa. St. 9.

2. DECEIT—REPRESENTATIONS AS TO VALUE, HOW CONSIDERED—RULE OF CAVEAT EMPTOR.—Speaking in general terms, the rule is that representations as to value will not be considered fraudulent though untrue, and known to be so by the party making them. It is considered as merely expression of opinion, about which men would differ. When *parties are on an equal footing* representations and exaggerations of the value of property will not be considered fraudulent ; the law will presume that a man will take care of himself. The law generally applies the rule of *caveat emptor*, and it is on this principle that the decisions are based. But if from the character, situation, or surroundings of the thing traded for, one party is *compelled* to trust the representations of the other, and, reposing special confidence in him for that purpose, relies on his proffered representations, being precluded from the situation of the property from giving it his personal observation, or from its character being unable to judge of it, the law will protect him in the trust he reposes in the opposite party. Following *Dunn v. Waite's Adm'r*, 63 Mo. 181.

3. PRACTICE—INSTRUCTIONS—RIGHTS OF LITIGANTS CONCERNING. — A litigant has the right to instructions placing before the jury in plain and direct terms every legal phase of his case which is justified by the evidence. Where the evidence tends to show there were probably two causes or inducements operating on a party, which cause him to make a trade or purchase, one emanating from fraudulent representations of the defendant, and the other from some independent source, he should respond in damages or restore the property as the case may be. "A party has a right to a direct and positive instruction, and the jury are not to be left to believe in distinctions where none exists, or to reconcile propositions by mere argument and inference." Per Story, J., in *Livingston v. Maryland Ins. Co.*, 7 Cranch. 506-544.

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, J.

*Reversed and remanded.*

The facts sufficiently appear in the opinion of the court.

ALDERSON & YOUNG, for the appellant.

I.   The court erred in refusing instruction numbered

*one*, asked by plaintiff, which is as follows : "The court instructs the jury that even though the jury find from the evidence that the plaintiff ever made inquiries concerning the land, of other parties, before he received the deed for it, yet if they believe that while the defendants knowingly made false representations as to the value of the land, which were relied on by the plaintiff (as being theirs), and were one of the inducing causes of the purchase, then your finding must be for the plaintiff." 1. This instruction was a correct declaration of *the law. Clarke v. Dickson*, 6 C. B. (N. S.) 453; *Smith v. Kay*, 7 H. L. Cases 750, 775; *Rawlins v. Wickham*, 3 DeG. and J., 304; *Trail v. Baring*, 33 L. J., ch. 521; *Cabot v. Christie*, 42 Vt. 121; *James v. Hodsden*, 47 Vt. 127; *Shaw v. Stine*, 8 Bosw. 157; *Morgan v. Skiddy*, 62 N. Y. 319; *Addington v. Allen*, 11 Wend. (N. Y.) 157. 2. The plaintiff's *evidence* was strongly in support of the charge that the defendants had effected the exchange by misrepresenting the value and description of the land, while defendants introduced testimony to prove that the plaintiff relied, not on their misrepresentations, but on information received from a third party. Here was a secondary issue, incident to the one of fraud, and plaintiff's instruction was drawn to guide the jury in determining it. By its rejection the jury considered the case without being informed that "the law will not apportion the penalties of guilt among offenders, nor divide spoil among highwaymen." 3. The law declared by that instruction is not embodied in any of the instructions which were given. If they reach it at all it is only by "inference and argument." A litigant is entitled to have the jury instructed on the law of the case clearly and pointedly so as to leave no reasonable ground for misapprehension or mistake. *Owen v. Owen*, 22 Iowa 270; *Gilkey v. Peeler*, 22 Tex. 663; *Ridens v. Ridens*, 29 Mo. 470; *Lytle v. Boyer*, 33 Ohio St. 506; Thompson on Charging the Jury, sect. 78.

II. The court erred in giving instruction numbered one, on the part of defendants, as follows : "If the jury believe from the evidence that plaintiff before trading for

the Allen county, Kansas, land with Bungardt, inquired of a real estate dealer, other than defendants, acquainted with the character and value of the land, respecting the same, and afterwards traded the goods sued for to said Bungardt, upon the knowledge of said land gained by such inquiry and not upon the representations of defendants, they must find for the defendant, Bungardt. In such case it is wholly immaterial what representations were made respecting the value and character of said land to plaintiff by Bungardt or Reid, or whether said representations were true or false. The two instructions (for plaintiff and for defendant), are so diametrically in conflict that to state the reason why the former should be allowed is to disclose the error in giving the latter. This instruction for defendant could have been understood by the jury only as it read, and meant : that if the plaintiff relied *at all* "upon the knowledge" he obtained from the third party, he could not recover. Hence the case was submitted on a principle that has been condemned without dissent by both English and American courts, and which gives immunity to fraud and deceit. *James v. Hodsden, supra.*

III. That a vendor may, by replevin, recover the goods obtained from him by fraud, is as firmly founded in reason and authority as the principle of self-defence. Wells on Replevin, sects. 318, 320, 366 ; Benjamin on Sales (3d Am. Ed.) sects. 433, 434, and cases cited by both authors.

M. Campbell, for Bungardt.

I. The plaintiff has these alleged representations occur "*while the attorney was preparing the papers* and drawing the deeds," and "*all after all terms of the trade had been settled.*" 2. The only alleged representation of defendants controverted is as to the value of the land, and this is not given as the statement of either Bungardt or Reid. 3. The offer to *rescind* was made *after suit was brought*, and was made expressly *because the title was defective*, which was not true and was not shown at the trial.

II. The *issue* here is the title of plaintiff when he filed his petition. Petition had been filed and writ issued, as his own attorney says, before plaintiff even offered to rescind the trade. Hence plaintiff had no right of possession *when he sued*, and could not maintain replevin. Story on Sales, sects. 447, 200; Wharton on Evidence, sect. 1028; *Thayer v. Turner*, 8 Metc. 530; *Pickington v. Trigg*, 28 Mo. 95. And since plaintiff did not attempt to prove the title to the land invalid, while.defendant did prove said title to be good, the offer made was worthless to revest in plaintiff the title to these goods, without which he could not maintain replevin. And equity will not rescind an executed contract for the sale or barter of land "because the title is defective," unless the contract has been tainted by.actual fraud. *Hart v. H. & St. Jo. R. R. Co.*, 65 Mo. 509; *Cooley v. Rankin*, 11 Mo. 642; *Key v. Jennings*, 66 Mo. 357. Nor can a court of law rescind a conveyance, or give a judgment amounting to a rescission. Rawle. Cor. Title, 278; *Reese v. Smith*, 12. Mo. 344; *Luckett v. Williamson*, 31 Mo. 54; *Hart v. Hamblin*, 43 Mo. 171; *Brigham v. Winchester*, 6 Metc. 460; Adams on Equity, 97, 351; Story on Eq. Jur., sect. 698. It follows that the court could create no title in plaintiff by holding this vain offer to be a rescission, nor could it decree "the restoration of the purchase money and interest." *Hart v. R. R.*, 65 Mo. 509; Kerr on Fraud, 83; Hilliard on Sales, sect. 13, p. 10.

III. The plaintiff has pleaded and relied upon a plain legal title to these goods, and no proof was admissible except proof of such title. The representations as to value, and whether true or false, ought not to have been allowed to go to the jury at all on the issues in this case. *Maguire v. Vice*, 20 Mo. 429. The trade or exchange was not void, but only voidable. But on this petition the only sort of fraud that plaintiff had a right to show was such fraud as nullified, from the beginning, the whole transaction, *and this must have been pleaded.* *Burrows v. Atler*, 7 Mo. 424; *Corby v. Weddle*, 57 Mo. 459; Kerr on Fraud, 328; *Crowe v. Peters*, 63 Mo. 429; *Davis v. Luster*, 64 Mo. 43; *Smith v. Sims*, 77 Mo. 269.

IV. There is not the shadow of a showing of fraudulent representations. All they said was simply equivalent to the phrase, "we do not know the value of this land." *Hodges v. Torry*, 28 Mo. 99. They must be in reference to some material thing unknown to the vendee, as to the nature, quality, quantity, situation, and title thereof, *affecting the whole subject matter* of the contract. *Dunn v. White's Adm'r*, 63 Mo. 181; *Langdon v. Green*, 49 Mo. 363; Story on Sales, sects. 169, 360, 380.

V. There is no ground for complaining of the instructions. The instructions given as a whole included the propositions in plaintiff's *first* instruction, in plainer language and more readily understood. Besides, the instruction refused to the plaintiff is not the law of this case, but some other case. There was no testimony of this sort of "representations." The evidence shows that plaintiff did not "repose special confidence in the representations of the vendor," nor "enter into the contract on the strength of that confidence." *Langdon v. Green*, 49 Mo. 363.

Opinion by ELLISON, J.

This is an action of replevin to recover possession of a stock of hair goods, consisting of switches, puffs, curls, frizzes, fronts, bangs, etc., given to defendant in exchange for eighty acres of land in Allen county, Kansas. The plaintiff bases his suit on the fraud of defendant in misrepresenting the description and value of the land; the sole issue being one of fraud. The action was dismissed as to defendant, Reid. It has doubtless been a troublesome case, as, beginning in 1878, there have been five trials, before three *nisi prius* judges, the plaintiff, as he states, having had two verdicts, hung two juries, and lost at the fifth and last trial. There was evidence tending to show that plaintiff was a stranger in Kansas City, and had never seen the real estate traded him; and that he relied wholly on the representations of defendants as to the character and value of the land. That defendants had an attorney present during the negotiations, or, at least, a part of it; and that he arose several times to go

out and get an attorney to come and advise him as to the correctness of everything, but defendants and the attorney persuaded him not to, saying it was not worth while and would be a useless expense on his part, as everything was all right. That defendant represented that the land was worth from one to two thousand dollars, cash; that it was well watered and timbered, and was under fence. That the title was perfect and was free from any encumbrances. That plaintiff relied wholly on these statements.

The evidence on the part of the defendant was a denial of any representations, or any effort to prevent plaintiff going to advise with an attorney, but on the other hand defendant referred him to parties acquainted with the land. That plaintiff counseled with these parties, and upon information and representations had of them, made the trade. Plaintiff appeals to this court, assigning as errors the following, to-wit:

I. The court erred in refusing the instruction numbered one, asked by the plaintiff, which is as follows:

"1. The court instructs the jury that even though the jury find from the evidence that the plaintiff made inquiries concerning the land of other parties before he received the deed for it, yet if they (he) believe that the defendants knowingly made false representations as to the value of the land, which were relied upon by the plaintiff and were one of the inducing causes of the purchase, then your finding must be for the plaintiff."

II. The court erred in giving instruction numbered one on the part of the defendants, as follows:

"1. If the jury believe from the evidence that plaintiff, before trading for the Allen county, Kansas, land with Bungardt, inquired of a real estate dealer, other than defendants, acquainted with the character and value of said land, respecting the same, and afterwards traded the goods sued for to said Bungardt upon the knowledge of said land, gained by such inquiry, and not upon the representation of defendants, they must find for defendant, Bungardt. In such case it is wholly immaterial what representations were made respecting the value and

character. of said land to plaintiff by Bungardt or Reid, or whether said representations were true or false.''

There was no evidence contradicting or impeaching defendant's representations as to there being fences, timber, and water on the land, which leaves this case standing squarely on the representations of value of the land.

The defendant contends that the judgment should be affirmed because plaintiff has no standing in court; for that, first, replevin will not lie; second, conceding the action proper, there must have been a rescission by plaintiff and a tender back of a deed for the land *before* the institution of the suit; third, conceding this to be done, proof of representation as to value will not support an action grounded on fraud.; fourth, that plaintiff's refused instruction was not the law, nor any part of the law of the case.

The plaintiff takes the opposite ground on each of these propositions, and claims that the judgment should be reversed on account of the refusal of his instruction numbered one, wherein the law is declared to be, that if defendant's fraudulent representations was one of the inducements to the trade, plaintiff should prevail in the verdict.

As this case is to be re-tried, it will be necessary and important to notice the several points of objection above set out, in order that the court and the parties may be aware of the views we entertain of the principal points arising in the record. We will do so, in the order named. Appellee insists, with much apparent earnestness, that replevin is not plaintiff's proper remedy. In this we think he is mistaken; for where the possession of goods has been parted with by means of false and fraudulent representations, the victim of the design and artifice has his election to stand by the contract and sue for damages, or treat the contract as void and rescind it. Fraud, trick, and deceit will, at the election of the party injured, entitle him to treat the entire negotiation as void from its inception, and authorize a court in holding that, notwithstanding the possession of the property has changed, yet the title—the property in the goods—has not passed.

Upon his offer to rescind, or, rather, upon his rescission, the title to the property immediately revests in him, with the consequent right of possession. Detention from one who has both right of property and right of possession, is, necessarily, wrongful. Besides Wells on Replevin, the authorities hereinafter cited on the question of rescission fully demonstrate the proposition that this action was properly brought in so far as the right to maintain replevin in a case of this sort, where a proper rescission is conceded. But in such cases it is absolutely essential that the party wishing to assert this right should, immediately on discovering the bad faith of the one with whom he has dealt, rescind the contract by making him *statu quo*. The rescission must be *in toto*, for one will not be permitted to adopt so much of a voidable contract as he deems beneficial and reject that portion which may be thought to be onerous. In this connection defendant claims that the action was brought prematurely; that there is no evidence in the cause showing a rescission until after the filing of the suit, making the affidavit, and the issuance of the writ. Whether the court below regarded any of the evidence as tending to show an offer to rescind before instituting the suit, or whether the court deemed that an immaterial matter, we cannot gather from the record. We cannot say there is no evidence of a rescission prior to the time when plaintiff went to defendant with the sheriff and the writ. The testimony for plaintiff on that head is as follows: Plaintiff says, "after Bungardt got the goods, I got him to deliver to me the power of attorney, and then I thought the matter over and thought best to consult an attorney. I did so. I then proposed to Bungardt to rescind the trade, and tendered him back the deed from DeFreese, and all the other papers which I had received from him, being the papers A, B, C, D, E, and hereto annexed, together with a quit-claim deed to H. DeFreese, reconveying the property and requesting a return of the goods." Again, in speaking of the time when the trade was made, he says: "The next day or two I caused this replevin action to be instituted." Then his attorney testifies that "I made

out a quit-claim deed and went with Mr. Cahn to Bun-
gardt to rescind the trade and tendered Bungardt the
quit-claim deed and all the papers. At the time we went
to Bungardt's office to rescind the trade, we took the
sheriff with us, and had got out all the replevin papers.
While we went up to Bungardt's room to rescind, we left
the sheriff at the foot of the stairs at the postoffice.
After we came down, the sheriff went up to serve the
papers on Bungardt, and we then went straight to Mrs.
Reid's and took the goods."

Now, whether this testimony related to one occasion
or two, we cannot say. If the time spoken of by plain-
tiff was prior to the time when he, his attorney, and the
sheriff went to defendant's office, the action was not
brought out of time. If, however, there was but one offer
and tender, and that, after making the affidavit, filing
the suit, and issuing the writ, we think the action prema-
ture and that it should abate. The rescission is the first
thing to be done and is an absolute pre-requisite to the
right to sue. It is said in *Pearsal v. Chapin* (44 Pa. St.
9-12), that "in actions of ejectment, replevin, trover,
*assumpsit*, or other form, for the purpose of recovering
back anything, as on the rescission of a contract, the
very first thing to be done, after showing that the plaintiff
parted with the thing in pursuance of the contract
alleged, is, to show that the plaintiff has rescinded the
contract, by doing, or offering to do, all that was neces-
sary and reasonably possible to restore the parties to the
condition in which they were before the contract, and
then to show that he had good ground to rescind it.
This is the order demanded by the very nature of the ac-
tion. He is not suing for a rescission, or to obtain one,
but for the results or consequences of a rescission, on the
ground that he has already exercised his right to rescind,
given by the law. There is hardly a discordant thought
in the reports, that these are the essential elements of a
rescission, and of the action founded upon it in case of
fraud." To the same effect is the case of *Melton v. Smith*
(65 Mo. 315). The case of *Wilbur v. Flood* (16 Mich. 40),
was, like this, an exchange of goods for real estate, in

which fraud was charged against the party trading the land. The court, in that case, said : "Where land has been conveyed in exchange for personal property, and the grantee seeks to repudiate the bargain for fraud, he cannot reclaim his goods without tendering a reconveyance ; and a mere offer to 'trade back' without such conveyance or tender, is no rescission.

"Where he made affidavit and sued out a writ of replevin for the goods before making tender of a deed, although it was served after such tender, it was held his suit was premature, as the cause of action in replevin must exist when the affidavit was made.

"The party aggrieved must do what he can to place the other *in statu quo*, and where it is possible this can only be done, in cases like the present, by a return, or an offer to return, of what he has received in exchange for what he has given. In the case of land, this can only be done by conveyance. And the property cannot revest without such an attempt to rescind. * * * But until the deed was tendered, plaintiff could have no property in the chattels, and the suit was prematurely brought." This doctrine is squarely sustained by the case of *Thayer v. Turner* (8 Met. 550). It is there said that "A party to an exchange of horses, who is deceived by false representations, cannot maintain an action of replevin for his horse against the party who has deceived him, until he has rescinded the contract and returned, or offered to return, the horse received by him.

"On an exchange of horses by A and B, A was deceived by B's false representations, and sued out a writ to replevy the horse delivered by him to B, and went with an officer to B's premises, and there left the horse received of B, without any communication with B. The officer then took the other horse on the writ, and afterwards read the writ to B; and A, at the same time, informed B that his horse was returned. *Held*, that the action of replevin could not be maintained, it being commenced before the contract was rescinded by the return of B's horse."

These extracts are sustained, with more or less force,

by the cases of *Wood v. Page*, 7 Wis. 511; *Moriarty v. Stofferan*, 89 Ill. 528; *Sanborn v. Osgood*, 16 N. H. 112; *Weeks v. Robie*, 42 N. H. 316. So, indeed, is the great weight of the authorities; those decisions to be found to the contrary will, on examination, be found to reveal the fact that the courts rendering them have given too literal and broad a meaning to the often used, but careless expression, that contracts induced by fraud or fraudulent representations, are void. Such contracts are not void, but only voidable, at the election of the party defrauded. There is nothing in the law preventing a man who finds himself cheated by fraud, from standing by the contract. He has his option, to rescind or abide by his misfortune. Chief Justice Lowrie, in speaking of this matter, very pointedly says: "We need not refer to the few sporadic cases that are incompatible with these decisions, but we may say generally that a strong, misleading element in them is undue reliance on the broadest meaning of the ambiguous word, void, which is so commonly found in laws, contracts, decisions, and text-books. Deductions founded on the broadest meaning of this word would lead to greater errors than are found in most erroneous cases, while those founded on its narrower and more usual meaning seldom err. When we say that any given class of contracts is void, let us be sure of the word before we undertake to declare all the consequences that follow from its application."

The few decisions which are to be found holding that a rescission and tender back is not necessary, are founded on the idea that the contract, being absolutely void, no property passed to the party guilty of the fraud. But, as we have seen, such contract is not void, but only voidable, it follows that it should be avoided by rescission before an action could be maintained for the property parted with by the one defrauded. From the foregoing it will be seen that if the only rescission offered was when plaintiff, with his attorney and the sheriff, went to the defendant's office, having theretofore instituted his suit by filing his petition, making affidavit,

and taking out his writ, his suit is prematurely brought and should be abated.

Coming, now, to the third branch of this case, there is no doubt that, speaking in general terms, the rule is that representations as to value will not be considered fraudulent, though untrue, and known to be, by the party making them. It is considered as merely expression of opinion, about which men would differ. When parties are on an equal footing, representations and exaggerations of the value of property will not be considered fraudulent. The law will presume that a man will take care of himself. He cannot go abroad without thought, care, or judgment, relying on the law to guide and protect him in his dealings with his fellow-man. He must use his judgment and will be required to govern himself with a view to his own protection. The law will not relieve him because he has been credulous ; nor will the law care for one who will not care for himself. The rule as to negligence in personal injury illustrates the idea. The law attends the traveler—will afford him redress, so long as he obeys its behests and looks out for himself. But so soon as he fails to use his own senses and energies, and in consequence is injured by the negligence of others, the law turns a deaf ear to his complaints. Falsehood as to value is, morally, as reprehensible as any other falsehood ; but human laws do not constitute a moral code. They are essentially civil. And though equity is said to be *in fore conscientiæ*, yet it is not detracting from the breadth and beauty of the equitable system to say that it is far more circumscribed than the dictates of conscience. I am aware that this was not always conceded, and that it has been maintained with the greatest force, not to say irresistible logic, that the moral code should be the legal rule of civil life. Cicero states the case of the corn merchant of Alexandria arriving at Rhodes, in a time of great scarcity, with a cargo of grain, and with a knowledge that a number of other vessels with similar cargoes had already sailed from Alexandria to Rhodes, and which he had passed on the voyage. He then puts the question whether the

Alexandrian merchant was bound in conscience to inform the buyers of that fact, or to keep silence and sell his wheat for an extravagant price ; and he answers it by saying that, in his opinion, good faith would require of a just and candid man a frank disclosure of the fact. When we remember that it was a Ciceronian maxim "that we ought to do nothing that is avaricious, nothing that is dishonest, nothing that is lascivious, even though we could escape the observation of gods and men," we would be prepared for such an answer. And while there can be no successful, logical refutation of the principle that "therefore all things whatsoever ye would that men should do to you, do you even so to them," yet the law regards the golden rule of too severe and elevated a character for practical application to the business affairs of men. The law generally applies the rule of *caveat emptor*, and it is from this principle that many, if not all, the decisions on this subject take their lead. Thus in the case of *Miller v. Craig* (36 Ill. 109), Judge Breeze says : "Now, upon the questions of fraudulent representations, and imposition, and deceit. Of these there is really no testimony. The appellant, in endeavoring to effect a trade with appellee, used no more artifice than is usual and allowable when a party wishes to dispose of property, real or personal. He has the right to exalt the value of his own property to the highest point his antagonist's credulity will bear, and depreciate that of the opposing party. This is the daily practice, and no one has ever supposed that such boastful assertions, or highly exaggerated descriptions, amounted to a misrepresentation or deceit. These parties were dealing at arm's length, and on equal ground, and their own judgment was to be their guide in coming to conclusions." So in the case of *Brown v. Castles* (11 Cush. 348), Metcalf, J., in speaking of this subject, says : "This rule is not to be applied to statements made by sellers concerning the thing sold, former offers for it, etc., it always having been understood, the world over, that such statements are to be distrusted. *Multa fidem promissa levant.*"

In *Gordon v. Parmlee* (2 Allen 212), the court in speaking of the statements as to productiveness of land says: "They fall within that class of affirmations which, although known to the party making them to be false, do not, as between vendor and vendee, afford any ground for a claim of damages. They come within the rule embodied in the maxim of the civil law, *simplex commendatio non obligat*. Affirmations concerning the value of land are only expressions of opinion, or estimates founded on judgment, about which honest men might differ materially. They are, strictly speaking, *gratis dicta*."

In the case of *Herman v. Cooper* (8 Allen 334), the court took the broad ground that "the representations of a vendor of real estate to the vendee, as to the price which he paid for it, are to be regarded in the same light as representations regarding its value. A purchaser ought not to rely upon them, for it is settled that even when they are false, and uttered with a view to deceive, they furnish no ground of action."

And to the same effect is the case of *Mooney v. Miller* (102 Mass. 217). Lord Ellenborough, in the case of *Vernon v. Keys* (12 East 637), says: "A seller is unquestionably liable to an action of deceit, if he fraudulently misrepresents the quality of the thing sold to be other than it is, in some particulars which the buyer has not *equal means with himself* of knowing, or if he do so in such a manner as to induce the buyer to forbear making inquiries which for his own security and advantage he would otherwise have made."

And so citations on this head might be multiplied, were it deemed essential to further brace the point with decided cases. Our law adopts the rule of the civil law, "*simplex commendatio non obligat;*" if the seller merely made use of those expressions which are common to sellers, who praise at random the goods which they are desirous to sell, the buyer could not procure the sale to be dissolved. Sugden on Vendors, vol. 1, p. 3.

Story's Equity Jurisprudence lays down the same doctrine, and, indeed, it is so intrenched in authority

that we may well consider the rule of law and equity as apart from the moral code; and though one may so deal with his neighbor as to fall under the animadversion of his Creator, he may escape censure from temporal tribunals.

But notwithstanding what has been here said, and which has been called out by the emphatic manner in which it has been pressed on our attention, it does not follow that defendants are in position to call to their protection the principles above announced. For it will be noticed throughout the authorities on this subject, that the broad proposition is always based on the assumption that the parties to the transaction stand upon equal ground, dealing with one another at "arm's length," and in antagonism.

The law, while demanding all that is stated in the foregoing part of this opinion, does not absolutely preclude one from trusting in another in regard to those things which that other has the means of knowing, and the one is not in a position to know or ascertain the truth from his own observation. If from the character, situation or surroundings of the thing traded for, one party is compelled to trust the representations of the other, and reposing special confidence in him for that purpose, relies on his proffered representations, being precluded from the situation of the property, from giving it his personal observation, or from its character, being unable to judge of it, the law will protect him in the trust he reposes in the opposite party.

Story, in his Equity Jurisprudence, says that a false reprsentation as to the value of property where there is no special confidence, or relation, or influence between the parties, and each meets the other upon equal grounds, relying on his own judgment, is not sufficient to avoid a contract of sale. But it would be otherwise where a party knowingly places confidence in another and acts upon his opinion, believing it to be honestly expressed. Sects. 197-198.

This principle receives support from a remark in the case of *Dun v. White, adm'r.* (63 Mo. 181.). The court

after having stated the general doctrine, says: "The uniform doctrine, however, is, that the principle above announced does not apply where the land which is the subject of the purchase is at a distance, and the purchaser relies wholly upon the description as given by the vendor."

If, then, we apply these principles to the facts in this case, as the evidence for plaintiff tends to prove them, we are bound to concede that the plaintiff has a standing in court and has a right to the opinion of the triers of the facts as to whether he was the victim of misrepresentation concerning that which he has no means of observing for himself, and upon which representations he placed reliance, putting confidence and trust in the party charged to have made them. And while in a case of this kind the proof of the fraud must be made cogent and strong, and made out to that degree of clearness and certainty as to leave nothing for suspicion or conjecture, yet it is for a jury to say, under the proper directions from the court, whether he has done that or not.

And this brings us directly to consider whether plaintiff has had his instructions properly passed on by the lower court. We are satisfied that by the refusal of plaintiff's instruction, he has been prevented from presenting his case to the jury in that way the law would justify him in doing. A litigant has a right to an instruction placing before the jury in plain and direct terms, every legal phase of his case which is justified by the evidence. We believe it to be the law that where the evidence, as in this case, tends to show there were probably two causes or inducements operating on a party, which causes him to make a trade or purchase, one emanating from fraudulent representations of the defendant, and the other from some independent source, he should respond in damages, or restore the property, as the case may be.

It is a philosophical truism that an effect may result from several causes, no one singly being sufficient to produce the effect. It is unquestionably true that a person may be brought to a conclusion from the combined

effort of individuals working to the same end, though each act without concert and in ignorance of the other. If the effort of one of these is a fraudulent one, made for the purpose of obtaining an unfair and undue advantage for gain, it does not lie in the mouth of such an one to say that some other independent representation was the cause of the deal, for the answer may be made to him, that it is enough that his own fraudulent conduct was one of the inducements, but for which the fraud would not have been consummated.

If the false statements of defendant were some of the inducements which led to the purchase or exchange, the existence of others would not interfere with the plaintiff's right to sue the defendant. *Clarke v. Dickson*, 6 C. B. (N. S.) 453; *Smith v. Kay*, 7 H. L. cas. 750, 775; *Rawlins v. Wickham*, 3 Deg. and J. 304, 317; *Trail v. Baring*, 33 L. J., ch. 521.

This question in the precise shape here presented, has been several times before the American courts. In the case of *Cabot v. Christie* (42 Vermont 121), Steele, J., says: "What the plaintiff would have done, but for the false representations, is often a mere speculative enquiry and is not the test of the plaintiff's right. If the false representations were material and relied upon, and were intended to operate, and did operate as one of the inducements to the trade, it is not necessary to inquire whether the plaintiff would or would not have made the purchase without this inducement."

And so Judge Redfield puts the case very forcibly in *James v. Hodsden* (47 Vt. 127), he says: "The charge of the court that it was not necessary they should find that the plaintiff relied solely on the representations, but it was sufficient if they found the representations were so far relied upon by the plaintiff as to constitute one of the inducements of the trade in question, we think sound and reasonable. * * * It is often said in the cases that the false representations must have been such that without them the trade would not have been made. But it is never possible for any man, in the aggregate of inducements that effected the sale, to determine whether the

result would have been attained with some of the inducements abated, nor should the guilty party, seeking the benefit of a sale fraudulent in fact, and induced in a measure by his fraud and falsehood, be permitted to allege in excuse that the innocent party might have made the purchase if he had practiced less deceit, and his lies had been less flagrant. If he resorts to unlawful means and accomplishes a fraudulent purpose, the law will not stop to measure the force of such inducements. It is enough that the party was deceived and cheated, and the defendant's falsehood and fraudulent practices contributed to that end. * * * If a party, induced by the several false and fraudulent declarations of two persons, different in time and character, purchases worthless property, it would not do to say that because the trade might not have been made if only one falsehood had been uttered, and the purchase not *wholly* induced by either, therefore he is without remedy or redress. If a fraud is accomplished and the unlawful acts of the defendant contributed thereto, he is answerable. The fraudulent acts of the defendant must indeed have worked an injury, or there could be no damage and no recovery. But if the wrong had been done, and the defendant is party to its infliction, the court will not apportion the penalties of guilt among offenders, nor divide spoil among highwaymen."

The case of *Shaw v. Stine* (8 Bosw. 157), is specially applicable to the points discussed here. It is there said: "In an action like the present, in order to entitle the plaintiff to recover, it is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff to make the sale which deprived him of his property. If the representations contributed to the formation of the conclusion in his mind to sell, that is enough, although there may have been other inducements operating at the same time and aiding in leading him to that determination. * * * It is plain that each one of several concurring considerations or motives may be so necessary to induce the performance of an act, that, in the absence of any

one of them, the act would not be done ; and when they
are all thus necessary and all concur, each one of them
must be deemed to have aided in producing the act and its
consequences.   In the case before us, the two things—the
representations made by the defendant respecting the
responsibility of Cohen & Mendel, and the supposed
security furnished by the endorsement of Stine and
Mendel—may have *both been necessary* to sell the goods
to the Cincinnati firm.   Neither separately might have
been a sufficiently powerful inducement, while both
united would be.   The charge of the court, as presented
in the case, may, therefore, be open to the criticism
that it might be construed as containing an intimation
to the jury that the plaintiffs could not recover unless
they sold the goods to Cohen & Mendel solely upon the
faith of the representations made by the defendant.
*   *   *   A charge liable to such a construction would
impliedly take away from the jury, or, at least, would not
present to them, as under the circumstances it should
have presented to them, the consideration of the proba-
ble or possible fact that the plaintiffs were led to make
the sale by *both* inducements, although they could not
have been brought to make it upon either one alone,
and that in that case the plaintiffs could recover for the
damages sustained by them as certainly as if the sale
were made upon the fraudulent representations solely.
It is proper, therefore, on this ground that a new trial
be ordered.''

The same principle is stated in the case of *Morgan v.
Skiddy* (62 N. Y. 319), Andrew, J.: "That he trusted
to a considerable extent to the judgment of Dalton, and
relied also upon the character of the men named as trus-
tees, can not be doubted.   But we think there is some
evidence that he relied also upon the statement in the
prospectus.   *   *   *   It was for the jury to say whether
he did not to some extent rely upon the description of
the property in the prospectus, in connection with the
confirmation of its truth by Dalton and the circum-
stances proved.   It is sufficient in order to maintain
the action, that the false statement was one, although it

may not have been the sole, inducement to the purchase." The case of *Addington v. Allen* (11 Wend. 157), supports the same rule.

Nothing against the doctrine herein announced is to be found in the decision of the supreme court of Missouri. It is there decided, as it is everywhere maintained, that the plaintiff in the action must have relied upon the misrepresentations. And although this direct question may not have been before the court, I think it will not be found that anything emanating from it, in any way militates against the proposition, that the mere existence of other causes will relieve defendant of his fraud, provided the false statements of which he has been guilty, form some of the inducements, without which the transaction would not have been consummated.

We can not say that the instruction given by the court after the refusal of the one quoted, as offered by plaintiff, covered the point prominently made ; for we believe it does not. At least it does not in that direct manner required of an instruction in presenting a distinct phase of the case. The jury might very well conclude from this instruction, that if plaintiff relied upon information he obtained independent of defendant, he could not recover, notwithstanding he may likewise have relied upon what defendant told him. It might be inferred, it could possibly be argued, from the instruction given, that the reliance need not have been wholly upon what the third parties told him, but 'that will not do as a substitute for the plain direction to which plaintiff is entitled.

Judge Story says : "If in point of law the plaintiffs were entitled to such direction the court erred in its refusal, although the direction afterwards given by the court might, by inference and argument, in the opinion of this court, be pressed to the same extent. For the party has a right to a direct and positive instruction ; and the jury are not to be left to believe in distinctions where none exists, or to reconcile propositions by mere argument and inference. It would be a dangerous practice

and tend to mislead instead of enlightening a jury."
*Livingston v. Maryland Ins. Co.*, 7 Cranch. 506–544.

Judge Thompson in his work on Charging the Jury,
section 78, approves this rule. For the foregoing reasons
the judgment will be reversed and the cause remanded, to
be re-tried in conformity to the views herein expressed.
Philips, P. J., concurs. Hall, J., concurs fully in the
principles of law enunciated in the foregoing opinion, but
dissents from the application therein made of these prin-
ciples to the facts of this case.