# CASES DETERMINED

# ST. LOUIS AND THE KANSAS CITY
# COURTS OF APPEALS

### OCTOBER TERM, 1888.

## J. E. STONE, Adm'r, Respondent, v. W. M. BARRETT, Appellant.

### Kansas City Court of Appeals, February 4, 1889.

1. **Replevin: FRAUD AS A GROUND FOR: PLEADING: EVIDENCE.** Under the allegation of ownership and rights to possession of personal property, in replevin, plaintiff may be permitted to show his former title and possession, and to disprove any title or right to possession in the defendant, and that plaintiff has never parted with the title; and may show that defendant's possession was fraudulently and wrongfully obtained, thereby showing that plaintiff's right to possession is yet complete without specifically alleging fraud in his petition.

2. ———: **CONTRACT OF SALE: RESCISSION OF: RULE AS TO: DEMURRER TO EVIDENCE: CASE ADJUDGED.** S. traded his stock of groceries to B. for certain lots. B. executed deed for the lots to S., and S. deed of trust back to B. Both deeds were placed in the hands of N., who at the trial still had them, but whether for delivery, or in escrow, the evidence is conflicting; B. took possession of the groceries and S. brought replevin, grounding, as his evidence showed, his right to recovery upon false representations of B. as to the incumbrances and charges upon said lots. *Held*, a demurrer to the evidence, on the ground that plaintiff should have made and tendered a deed to B. before suing was properly overruled, and that it was proper to submit the question as to whether B.'s deed was delivered or not to the jury on the instructions set out in the opinion, distinguishing, *Cahn v. Reid*, 18 Mo. App. 115.

( 15 )

3. **Evidence:** STATEMENTS AND ACTS OF DEFENDANT ADMISSIBLE. Though the contract between S. and B. was in writing, it was not error to admit, at the trial, statements made by B. at the time of the negotiations, relating to the extent of the incumbrances, nor to admit evidence as to what B. did with the lots shortly after the trade and conveyance.

4. **Damages:** ERRONEOUS INSTRUCTIONS AS TO : REMITTITUR. As plaintiff has entered, in this court, a *remittitur* of all damages awarded by the jury, the erroneous instruction on the measure of damages furnishes no cause for reversal.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Hollis & Hamner*, for appellant.

(1) The court erred in permitting testimony of fraud on the petition. Fraud must be pleaded ; " the facts constituting the fraud must be stated." Bliss on Code Pleading, sec. 211 ; *Pier v. Heinrichoffen*, 52 Mo. 333 ; *Scott v. Robards*, 67 Mo. 289 ; *Burgert v. Borchert*, 59 Mo. 80 ; *Clark v. Clark*, 86 Mo. 114. (2) The court erred in refusing to sustain defendant's demurrer at the close of plaintiff's evidence ; it positively showed no offer to rescind. "The rescission is the first thing to be done, and is an absolute prerequisite to the right to sue." *Cahn v. Reid*, 18 Mo. App. 115, and cases therein cited. (3) The court erred in permitting witness to answer, over objection of defendant, the following: "Now at the time that contract was made, what, if any, representation had Barrett made to Stone with regard to the nature and character of the incumbrance that was upon lots 5 and 6, block 2, Terrace Place." *Hotel Co. v. Bailey*, 3 Mo. App. 598 ; *Koehring v. Muemminghoff*, 61 Mo. 403 ; *Pearson v. Carson*, 69 Mo. 550 ; *Frissell v. Mayer*, 13 Mo. App. 331 ; *George v. Dean*, 17 Mo. App.

332 ; *Miller v. Dunlap*, 22 Mo. App. 97. (4) Court erred
in admitting testimony over objection of defendant, as
to what Barrett did with the property in Terrace Place
after this suit was filed, and the property abandoned by
plaintiff to go to destruction. *Anderson v. McPike*, 86
Mo. ·293.

*Peak, Yeager & Ball*, for respondent.

(1) Replevin is the proper remedy in cases of this
character. *Cahn v. Reid*, 18 Mo. App. 122, and cases
cited. (2) The common-law rule, making it necessary to
state in the petition facts constituting fraud, does not
apply to actions in replevin. It is a statutory action,
and only the general allegation of plaintiff's right of
possession is necessary. *Bosse v. Thomas*, 3 Mo. App.
477 ; *Auction Co. v. Mason*, 16 Mo. App. 473 ; *Young v.
Glasscock*, 79 Mo. 574. (3) No notification to defendant
of the rescission of the contract was necessary. Instruc-
tion numbered 4, given by the plaintiff, is the law. The
doctrine of *Cahn v. Reid, supra*, is not inconsistent with
this instruction. *Cole v. Railroad*, 21 Mo. App. 447, and
cases cited ; *Pence v. Langdon*, 99 U. S. 580. (4) The
testimony as to defendant accepting two hundred and
forty dollars for his equity in the lots was admissible
for the purpose of showing that what the defendant pre-
tended to give in exchange was of little or no value, not
equal in amount to the promissory notes to be given
him by the plaintiff. This testimony threw an impor-
tant light on the whole question of fraud in the original
transaction, and taken in connection with the other tes-
timony was clearly relevant and proper. (5) The con-
tract was executory. It was never executed by Barrett
as agreed. Exclusive of any question of fraud the title
to the goods remained in Stone and never passed to
Barrett. *Ridgeley v. Kennedy*, 52 Mo. 25 ; *Zwisler v.
Storts*, 30 Mo. App. 163 and cases cited.

GILL, J.—The controversy here grows out of a certain trade between J. E. Stone, now deceased, and defendant Barrett by which Stone was to exchange a stock of goods owned by him in Kansas City, for lots 5 and 6, block 2, Terrace Place, an addition to Kansas City, Missouri. The contract was dated June 30, 1887, though it seems was not signed until the next or succeeding day. The contract is as follows: "This contract of agreement made and entered into this thirtieth day of June, 1887, by and between J. E. Stone, party of the first part, and Wm. Barrett, party of the second part, both of Jackson county, Missouri. The party of the first part agrees to sell, and does sell and trade to the second party his grocery store at No. 1906 East Ninth street, Kansas City, Missouri, together with all the fixtures in said store, and two horses, and wagons, and harness, used by said Stone in his grocery store business, and the good will of said business. For and in consideration for the above, the said Wm. Barrett agrees to sell and trade to said J. E. Stone, lots 5 and 6, block 2, Terrace Place, an addition to Kansas City, Missouri, together with all the improvements thereon and the improvements as are to be completed according to the original plans, consisting of a good cistern for each house, and coal-shed, out-house and fences, and the lots to be graded according to the original plan and a privy for each house, the vault to comply with the city law, the said Barrett property to be traded subject to $3,500 incumbrance, which the first party assumes and agrees to pay, and J. E. Stone is to give the said W. M. Barrett the second deed of trust of said property for ($250) two hundred and fifty dollars; the said Barrett is to furnish an abstract showing a perfect title in himself to said property to the said J. E. Stone and a good warranty deed, and all taxes now due on said property of Barrett are to be paid by said

Barrett.    This trade is to be closed on or before July 1, 1887.

(Signed)                                " J. E. STONE.

                                        " W. M. BARRETT."

The next day after the execution of this contract the parties met.    Barrett made a deed to Stone for the lots in question and Stone executed a deed of trust back for the two hundred and fifty dollars, all as provided for in the above contract, but as to whether or not the deed from Barrett to Stone, and the deed of trust from Stone to Barrett were in fact *delivered* to the respective parties is a question upon which the evidence is conflicting.    The deed and deed of trust after execution were at the time left in the hands of one Noyes, an agent who had worked up the trade.    Whether as an escrow waiting an examination of the record title and condition of the real estate by Stone, or whether they were left with Noyes to hold as agent for Stone, it is not clear from the evidence.    At any rate, Noyes continued to hold all these papers and had them in his possession at the time of the trial of the case.

At the execution of these conveyances, on July 1, 1887, Stone turned over the possession of the stock of goods to Barrett, and he held them until this action in replevin was brought by Stone against Barrett on July 9, 1887.    The petition is in the ordinary form of action in replevin.    The answer was a general denial with allegations of title and right of possession in the defendant.

The *gravamen* of plaintiff's complaint is, that he parted with the possession of his goods and turned over the same to defendant Barrett upon false representations which Barrett made to him, Stone, as to the incumbrances and charges then against the real estate traded for, and that by reason of this false and fraudulent conduct practiced on him he was entitled to repossess himself of the goods.

At the trial below the plaintiff recovered and the defendant is here asking a reversal.

I. The first error complained of is that, upon an ordinary petition for the recovery of personal property, such as this was, the trial court permitted evidence of fraud when no fraud was pleaded. In other words, it is insisted that on this ordinary petition in replevin for these goods the plaintiff should not be allowed to show a right to reclaim the goods by reason of the fraud practiced by the defendant at the alleged sale or exchange unless such fraud is specifically alleged. We think this position of the able counsel for the defendant is not well taken.

Under the allegation of ownership and right to possession of personal property, in replevin, the plaintiff may be permitted to show his former title and possession and to disprove any title or right to possession in the defendant and that plaintiff has ever parted with the title ; and may show that the defendant's possession was fraudulently and wrongfully obtained, thereby showing that the plaintiff's right to possession is yet complete. *Auction Co. v. Mason*, 16 Mo. App. 473; *Young v. Glasscock*, 79 Mo. 574; *Greenway v. James*, 34 Mo. 326.

The cases cited by appellant do not conflict with these decisions.

II. The principal point relied upon by defendant appears in charging error on the trial court in refusing to sustain a demurrer to the plaintiff's evidence for the assigned reason that the plaintiff showed no offer to rescind the trade before instituting the action of replevin. It is claimed by the appellant that before plaintiff could maintain this action for the rescinding of the contract and recovery of the stock of goods he must show a return of all that the plaintiff received by virtue of said exchange. Reliance is had for this contention on the case of *Cahn v. Reid & Bungardt*, 18 Mo. App. 115.

The *syllabus* of that cause correctly reflects the opinion wherein it is declared that: "In such cases (where a rescission is sought) it is absolutely essential that the party asserting this right should, immediately on discovering the bad faith of the one with whom he has dealt, rescind the contract by placing him in *statu quo*. * * * And the rescission must be made by the offer to place the wrongful party in *statu quo* before action of replevin is maintainable, " etc.    Hence adopting this principle in this case of *Cahn v. Bungardt*, it was decided where the plaintiff had failed to return or offer to return into the defendants the title of certain property which the defendants had conveyed to the plaintiff before bringing the action that the suit was prematurely brought and the plaintiff must fail.    But the Cahn–Bungardt opinion would not justify the trial court in declaring that plaintiff in the case at bar had made no case.    If the facts are, as related in portions of the evidence, that plaintiff had received nothing in the trade with Barrett, if the deeds had in fact never been delivered and plaintiff had no conveyance of the Kansas City lots, then as plaintiff had received nothing from Barrett he had nothing to return.    The plaintiff would not be required to do a vain thing.    The defendant Barrett would get nothing by a deed from Stone since Stone had never received a deed from Barrett.    If, however, the delivery of the deed to Noyes was a delivery to Stone's agent authorized by him to receive the conveyance then it would have been incumbent on Stone in seeking a rescission to re-convey the property to Barrett before bringing his suit for recovery of the grocery store.    The instructions of the trial court placed this issue squarely before the jury.

The jury was, in effect, told that if Barrett had delivered the conveyance of the lots to Stone in person, or to some one as agent who was authorized to receive the deed for Stone, then that plaintiff could not maintain the action without showing a re-conveyance from Stone

to Barrett, and for the plaintiff, the court instructed the jury that if there was no delivery of the deed to Stone, nor to any one authorized by Stone to receive it, that then it was not incumbent on Stone to make any deed back to Barrett; in other words that if the jury found that there had been nothing delivered to Stone there was nothing to return. We think the court in this respect properly instructed the jury.

III. Neither do we think the court below committed error in receiving evidence of the statements made by Barrett at the time of the negotiations, and when the contract was made relating to the extent of the charges and incumbrances on the lots.

It was not the province of this evidence to vary, add to or subtract from the written contract and therefore subject to objection for that reason. Whether he made such declarations as claimed, or not, did not disturb or vary in the least the terms of the written contract.

These statements were admitted as tending to prove the fraudulent designs of Barrett whereby it was claimed he intended by mis-stating the condition of the incumbrances to induce the plaintiff Stone to take the property and give over his store to Barrett. So, too, the evidence as to what Barrett did with the Kansas City lots shortly after the pretended trade and conveyance to Stone was material and competent. It tended to show his own construction placed on the transaction as to whether or not a conveyance was intended when the deed was executed and placed in the hands of Noyes. His treatment of the property included in the deed subsequent to the execution of the deed and deposit thereof with Noyes tended at least to show that the deed had never been delivered in fact to Stone and was not so considered by the parties.

IV. The instruction of the court on measure of damages was error, but since in this court the plaintiff

has entered a *remittitur* of all the damages awarded by the jury such error furnishes no cause for a reversal.

Upon the case then as presented by the record, the judgment of the circuit court should be affirmed. The other judges concur.