MRS. ERMINA BLACKFORD, RESPONDENT, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, APPELLANT.*

Kansas City Court of Appeals. November 11, 1929.

*Corpus Juris-Cyc. References: Carriers, 10CJ, Section 1475, p. 1087, n. 85; Damages, 17CJ, Section 152, p. 832, n. 64.

*Reilly & Greathouse, Mytton & Parkinson* and *Randolph & Randolph* for respondent.

*Mayer, Conkling & Sprague* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3,000. Defendant has appealed.

There was testimony tending to show that plaintiff, a woman sixty-four years of age, was injured on June 28, 1927, while a passenger on one of defendant's street cars in St. Joseph. Plaintiff was accompanied by her married daughter and an infant grandson. The three were seated about the middle of the car. Plaintiff pressed a button to signal the motorman of her intention to alight from the car, whereupon the daughter and the boy went forward in the car, plaintiff remaining in her seat until the car had come to a complete stop. Thereupon a colored man alighted from the car and the motorman, while the daughter was standing in the aisle behind him without turning to see if any one else was going to alight, shut the door by an automatic device and started the car forward with a violent jerk. When the car started plaintiff was arising from her seat and had reached a position almost upright. The starting of the car threw her backwards in her seat, the small of her back striking the seat as she sat down and her head was violently jerked back. Soon thereafter plaintiff swooned and did not regain consciousness until she was at the hospital.

Plaintiff was assisted from the street car by the motorman and another man and placed on the ground near the curbing in the street. The motorman called one of the company's doctors and plaintiff was assisted to the doctor's automobile. As they were making her walk plaintiff's body would lean forward, her feet at each step would fly up in front of her and her head was drawn backward.

There is conflict in the testimony as to the nature of the injuries, if any, plaintiff received. Plaintiff contending that she received a very severe injury to the cervical vertebra or the bone at her neck, if not a dislocation thereof. There was testimony tending to show that plaintiff also received a very severe injury to her back and that as a result of her injuries she suffers great pain and from dizzy spells; that on several occasions plaintiff has swooned and lost her balance; that at one time she fainted and fell down a flight of stairs; that she has been rendered very nervous; that while she was in good health before the casualty in question she is now very nervous and unable to do any work except a small amount of housework.

The court refused to give the following instruction on behalf of the defendant:

"The court instructs the jury that even if you find and believe from the evidence that plaintiff was made nervous solely by reason of the starting of the car at the time and place mentioned in evidence, yet if you further find and believe from the evidence that she sustained no physical injury at said time and place, under the law it is your duty to find a verdict for the defendant."

Defendant insists that the court erred in refusing to give this instruction. As we understand it, plaintiff contends that there was no evidence upon which to base it. We think to the contrary. It will be necessary for us to state some of the testimony on behalf of the defendant in this regard. It may be stated here that there was some evidence on the part of the defendant tending to show that plaintiff received no injury at the time the car started other than merely being made nervous, but we are not concerned with the conflict, if any, in the testimony of defendant's witnesses, but if there is any substantial evidence whatever upon which to base the instruction it should have been given. [State ex rel. v. Cox, 293 S. W. 122; Frankel v. Hudson, 271 Mo. 495.]

In the first place there was testimony on the part of the defendant tending to show that plaintiff was hardly out of her seat when the car started and that she was not thrown back into her seat with the violence that the testimony on her part tends to show. There was testimony on the part of the defendant tending to show that plaintiff did not lose consciousness at any time and was able to walk to the doctor's automobile; that she was examined at the hospital to which she was taken and was there found not to have received any injury; that she was suffering merely from hysteria caused by nervousness.

The evidence shows that plaintiff on September 17, 1926, while riding upon an Interurban car, was jerked in a similar manner to the jerk she claims to have received in this instance. At that time her head was jerked back and her cervical vertebra was dislocated. Her evidence tends to show that she had entirely recovered from this injury when she was thrown at the time involved in this lawsuit.

There was evidence on behalf of the defendant tending to show that when she reached the hospital X-ray pictures were taken of her neck and it was found there had been no fracture or dislocation of the vertebra at this time; that at this time she did not complain of her back, but merely complained of pain in the back of her head and in her neck; that her entire spine or back was examined and there was no physical evidence of injury upon her anywhere; that she was holding the muscles of her neck very rigid with her head extended backward. A passenger on the car testified that after it

started plaintiff's daughter said, after asking her mother "what is the matter?" "since mother got hurt the least little jar or anything excites her."

One of defendant's doctors testified that plaintiff also complained of pains in the lower region of her back but there was no evidence of injury there. The evidence shows that discoloration from a bruise does not occur immediately but this doctor testified that he examined plaintiff two days before she left Noyes Hospital, which was on July 6th or 7th, 1929, and that he found no discoloration or any evidence of injury to her back at this time; that at this time plaintiff had "*subjective* soreness there."

One of defendant's doctors testified that he saw plaintiff shortly after she was taken to the hospital and that

"I examined her; I couldn't find anything wrong with her; either she was quite highly nervous or she was malingering, one or the other; she was complaining a good deal of pain. I couldn't find any reason or cause for it. I gave her a hypodermic of distilled water; only treatment I prescribed.

"Q. How did she seem to be after she had this hypodermic of nothing but water? A. Quieted down a few minutes afterwards.

"Q. Did you make a physical examination of her all over? A. Yes, sir.

"Q. On her back and head? A. Yes, sir, legs and feet, abdomen, chest and heart—everything.

"Q. Did you find any visual evidence of injury upon Mrs. Blackford at all? A. None at all. . . . I could find no abnormality, no signs of injury, no swelling; the spinal processes were in perfect alignment; she held her neck in rigid position, as I am now, voluntary, however—when her attention would be called to something else she would loosen up her neck and it could be moved about without any crepitas or interference with the motion."

He further testified that her pulse, temperature and reflexes were normal and that there was no evidence of shock.

Another doctor who examined plaintiff at the hospital, testifying for defendant, stated:

"She had her head sharply back while I was examining it, kinked very sharply back and rigid, but when I took hold of her head to manipulate it I not only moved it easily but she would move it herself. Then when I got through moving it, it would go back in the tight position again.

"Q. State if she let her head drop forward in a natural position upon her shoulders at times. A. She did.

"Q. What condition did you find about her neck, or back, or upper part of her back with regard to muscular contraction? A. The muscles of the back of her neck were very strongly contracted, drawn up tight and sharp, holding her head backward very strongly.

"Q. State whether in your opinion that was voluntary or involuntary. A. In view of the lack of evidence of dislocation I would say it was a voluntary action."

Later this doctor testified that:

"It was not my intention to say she was malingering or otherwise voluntarily contracting her neck to give a false impression. I didn't mean that when I said voluntary. There are certain voluntary muscles controlled by the nerve supply. When these muscles contract we call that voluntary action, and that, in my opinion, is what this was. It is not my opinion that she was doing this maliciously at all."

This doctor gave as his opinion that plaintiff was suffering from "hysterical contraction of her muscles."

Another of defendant's physicians testified that the contraction of the muscles in plaintiff's neck was a spasmodic contraction; that he had seen "just such cases in hysteria, . . . as a result of a violent jerk or blow."

Another doctor, testifying for defendant, stated that he examined plaintiff on February 1, 1928; that at this time he found:

"Inflammation of the joint at the attachment of the articulation of the lower part of the lumbar spine with the sacrum . . . what we call chronic hypertrophic arthritis. . . . Inflammation of the joint, the articulation of the spine and pelvis."

Another doctor examined plaintiff late in the spring of 1928, and found her suffering from pharyngitis and pyorrhea; that she also had a mild case of myocarditis, which means a chronic inflammation and weakening of the muscles of the heart.

From the testimony on the part of the defendant that we have detailed it will be readily seen that there was room for the jury to find that plaintiff received no physical injury at the time she claimed. The jury could have found from the evidence that plaintiff had gone through a similar experience in 1926 when she suffered a dislocation of the cervical vertebra rendering her nervous and since that time, in the language of her daughter, "the least little jar seems to excite her;" that the jerk she received on July 28, 1927, caused her to become highly nervous and to hold her head in the backward position described in the testimony, thinking that something had again happened to her neck. As to the claim of injury to plaintiff's back, there was, of course, evidence from which the jury could have said that she received none. Under the circumstances we think it was peculiarly fitting that the court give an instruction on behalf of the defendant of the kind it refused and the refusal thereof was error. [Porter v. St. Joseph L. H. & P. Co., 311 Mo. 66.]

We do not believe that this error was cured by the giving of other instructions by the court. There was an issue to whether the car

jerked at all and plaintiff's instruction No. 1, which covered the entire case and directed a verdict, had the jury find that if the car was violently jerked and started forward and plaintiff was violently thrown against the car and its parts, and thereby injured, their verdict should be for the plaintiff. Defendant's instruction D told the jury that unless they found that the street car was started with an unusual movement or jerk, and plaintiff was thereby injured, then regardless of every other fact and circumstance in the case, plaintiff could not recover.

While these instructions have the jury find that plaintiff was injured before she could recover, they do not specify the nature of the injury referred to therein. On the other hand, plaintiff's instruction on the measure of damages told the jury that they could assess plaintiff's damages in such sum as they might believe would reasonably compensate her for her injuries, if any, "considering their nature and character as shown by the evidence."

It is well settled that there can be no recovery for fright, terror, alarm, anxiety or distress of mind when these are not accompanied by some physical injury. [See Porter v. St. Joseph L. H. & P. Co., supra.] But under these instructions there was room for the jury to find for plaintiff on her condition of nervousness alone, although they believed that she received no physical injury. We would not be justified in holding that the instructions given by the court submitted the defense of lack of physical injury to the plaintiff, if in fact they submitted it at all, in such a manner as defendant was entitled to have it submitted (Cohn v. Reid, 18 Mo. App. 115), especially in view of plaintiff's instruction on the measure of damages, in which the jury was left to consider the nature and character of the injuries sustained by plaintiff with no limitation as to such nature and character except "as shown by the evidence."

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.